UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOCELYN OJEDA,

                      Plaintiff,

        -v-

IAN SCHRAGER, *et al.*,

                      Defendants.

23-CV-8237 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiff Jocelyn Ojeda brings this action against her former employers, Defendants Ian Schrager and IS Chrystie Management LLC d/b/a Public Hotel ("Public Hotel"), for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the New York City Human Rights Law, New York City Admin. Code § 8-101 *et seq.* ("NYCHRL"). Ojeda alleges that she was employed by Defendants and that Defendants terminated her because of her pregnancy. Ojeda brings claims against both Defendants for discrimination on the basis of sex in violation of Title VII and the NYCHRL, and a claim against Defendant Ian Schrager for aiding and abetting discrimination in violation of the NYCHRL. Presently before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' motion is granted in part and denied in part.

**I.    Background**

    **A.    Factual Background**

      The following facts are taken from the complaint and are assumed to be true for purposes of resolving Defendants' motion. (ECF No. 1 ("Compl.").) Ojeda began her employment with Public Hotel beginning on or about July 20, 2022, as the Arrivals, Departures, and Guest Experience Manager, and she was part of the Executive Committee. (*Id.* ¶¶ 11, 14.) When she

1

was hired, Ojeda reported directly to Ian Schrager, who at all relevant times was "the most senior person at Public Hotel." (*Id.* ¶ 13.)  In or around October 2022, Public Hotel hired Giorgio Di Pietro as the General Manager, and he later became the Managing Director. (*Id.* ¶ 16.)  Upon being hired, Di Pietro became Ojeda's direct supervisor. (*Id.*)  At all relevant times, "Ojeda was qualified for her role, as confirmed by Ojeda's prior experience doing similar work at other hotels," and "Ojeda performed her duties satisfactorily, as confirmed by the positive feedback she received." (*Id.* ¶¶ 12, 15.)

On or around December 13, 2022, Ojeda received the news that she was pregnant. (*Id.* ¶ 17.)  Ojeda told Di Pietro and the Human Resources Manager about her pregnancy during the week of December 19, 2022. (*Id.* ¶ 18.)  Ojeda continued to work during the 2022 holiday season, which was a busy time for Public Hotel and Ojeda. (*Id.* ¶ 19.)  During this time period, Ojeda "worked 18 days in a row, working 20 shifts in that time period without any days off, and Ojeda took only one day off for a doctor's appointment in early January 2023." (*Id.* ¶ 20.)  The holiday season was a success for Public Hotel. (*Id.* ¶ 21.)

On January 9, 2023, at the end of the workday, Ojeda was terminated "out of the blue." (*Id.* ¶ 22.)  Di Pietro called Ojeda into a meeting with the Director of Finance and told Ojeda that she was being terminated due to poor performance. (*Id.* ¶ 23.)  Ojeda alleges that "Public Hotel's claim of poor performance was not legitimate," as Ojeda "had received only positive feedback about her performance and no one had ever alerted her about any deficiencies" in her work. (*Id.* ¶ 24.)  In addition, Ojeda had a positive working relationship with Di Pietro, who would have notified her had there been an issue with her work. (*Id.* ¶ 25.)  Moreover, Public Hotel's claim that Ojeda was being terminated as a result of poor performance "was further undermined by the fact that, when Pietro fired Ojeda, he appeared physically uncomfortable and

was unable to provide her with any reasoning for why her performance was so poor that she had to be terminated summarily." (*Id.* ¶ 26.) Ojeda alleges that "[i]t was clear that [Di] Pietro did not believe that Ojeda was really being fired because of her performance, but rather because she became pregnant." (*Id.* ¶ 27.) According to Ojeda, "Schrager repeatedly talked about having a culture that was 'on brand,' which he made clear meant outward appearances." (*Id.* ¶ 28.) Thus, "[t]he real reason Ojeda was fired was because Schrager did not want a pregnant woman in a leadership role at his hotel." (*Id.* ¶ 29.)

### B. Procedural History

Ojeda alleges that she received a Notice of Right to Sue from the United States Equal Employment Opportunity Commission on August 1, 2023. (*Id.* ¶ 3.) Ojeda commenced this action on September 18, 2023. (ECF No. 1.) Defendants filed a motion to dismiss on December 11, 2023. (ECF No. 22.) Ojeda filed an opposition to Defendants' motion to dismiss on January 8, 2024. (ECF No. 27.) Defendants filed a reply in further support of their motion to dismiss on January 18, 2024. (ECF No. 28.)

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means that a complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. A complaint is also properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. While

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *id.* at 678, the Court must draw "all inferences in the light most favorable to the nonmoving party[ ]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). Determining whether a complaint states a plausible claim is ultimately a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III. Discussion

The Complaint alleges that Defendants discriminated against Ojeda on the basis of sex, in violation of Title VII and the NYCHRL. The complaint also alleges that Defendant Schrager aided and abetted discrimination against Ojeda in violation of the NYCHRL.

#### A. Title VII Sex Discrimination Claim

Under Title VII, it is unlawful for an employer to "to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). "The Pregnancy Discrimination Act [('PDA')] makes clear that Title VII's prohibition against sex discrimination applies to discrimination based on pregnancy." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019) (quoting *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 210 (2015)). The PDA added the following language to Title VII's definitional section:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work[.]

*Xiang v. Eagle Enters., LLC*, No. 19-CV-1752, 2020 WL 248941, at *4 (S.D.N.Y. Jan. 16, 2020) (quoting 42 U.S.C. § 2000e(k)).

Title VII claims, including for sex and pregnancy discrimination, are governed by the three-step burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74-75 (2d Cir. 2016). First, a "plaintiff must establish a *prima facie* case of sex discrimination by demonstrating that (1) she was within the protected class; (2) she was qualified for the position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Id.* at 75 (internal citations and quotation marks omitted). "If the plaintiff successfully establishes a *prima facie* case, 'the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action.'" *Id.* (quoting *United States v. Brennan*, 650 F.3d 65, 93 (2d. Cir. 2011). "If the employer carries that burden, 'the plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination.'" *Id.* (quoting *Feingold v. New York*, 366 F.3d 138, 152 (2d Cir. 2004)).

At the motion to dismiss stage, Ojeda "is not required to plead a prima facie case under *McDonnell Douglas*." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). Instead, "to defeat a motion to dismiss . . . in a Title VII discrimination case, a plaintiff must plausibly allege that (1) the employer took adverse action against him, and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision." *Id.* at 87. A plaintiff "may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* (citing *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir. 2015)). At the pleading stage, Ojeda must only plead facts that "give plausible support to a minimal inference of discriminatory

5

motivation." *Littlejohn*, 795 F.3d at 311. An inference of discrimination can arise from circumstances including, but not limited to, "the sequence of events leading to the plaintiff's discharge." *Id.* at 312 (internal citation and quotation marks omitted).

Defendants do not dispute that Ojeda has adequately alleged the first three prongs to establish a *prima facie* case under the *McDonnell Douglas* framework: Ojeda adequately alleges that she is a member of a protected class, that she was qualified for her position, and that she was subject to an adverse employment action when she was terminated. However, Defendants contend that Ojeda has failed to adequately allege the fourth prong—that her termination was *because of* her pregnancy.

Ojeda contends that "the remarkably close temporal proximity of just three weeks between Ojeda announcing her pregnancy on December 19, 2022 and her termination on January 9, 2023" supports an inference of discrimination that is sufficient to withstand a motion to dismiss. (ECF No. 27 at 5.) The Court agrees. "In assessing the sequence of events, the 'temporal proximity between the time she disclosed her pregnancy and her termination' is often an important consideration." *Farmer v. Shake Shack Enters., LLC*, 473 F. Supp. 3d 309, 326 (S.D.N.Y. 2020) (quoting *Lenzi*, 944 F.3d at 108) (collecting cases). The few-week period between Ojeda's pregnancy announcement and her termination "falls well within the two-month period in which courts frequently find a plausible inference of causation in discrimination cases." *Id.* at 327 (collecting cases).

Moreover, Ojeda alleges additional facts that, when taken together with the close temporal proximity between her pregnancy announcement and her termination, give rise to a plausible inference of discrimination. Ojeda alleges that in the few weeks between her pregnancy announcement and her termination, she "worked 18 days in a row, working 20 shifts

6

in that time period without any days off, and [she] took only one day off for a doctor's appointment in early January 2023" in order to contribute to the Public Hotel's success during a busy holiday season. (Compl. ¶¶ 20, 21.) Ojeda also alleges that she had never received negative feedback on her work prior to her termination, and that during her termination meeting, Di Pietro was "unable to provide her with any reasoning for why her performance was so poor that she had to be terminated summarily." (*Id.* ¶¶ 24, 26.) "These events, as alleged, played out over a short period, such that the factor of temporal proximity supports [Ojeda's] claim that the firing was motivated by discrimination." *Farmer*, 473 F. Supp. 3d at 327.

Defendants contend that temporal proximity alone is insufficient to support an inference of discrimination. (ECF No. 28 at 5-6.) The cases Defendants cite in support of this proposition are inapposite, however, as they were all decided at the summary judgment stage. (*Id.*) And as discussed above, Ojeda alleges facts in addition to mere temporal proximity. Taken together, these facts sufficiently allege that Ojeda's termination was motivated at least in part by her pregnancy. Ojeda has therefore adequately pleaded a *prima facie* case of sex discrimination under Title VII.

B.  **NYCHRL Sex Discrimination Claim Against Corporate Defendant**

"Claims brought under the NYCHRL are analyzed using the same framework as Title VII . . . , but 'must be viewed independently from and more liberally than their federal . . . counterparts.'" *Deveaux v. Skechers USA, Inc.*, No. 19-CV-9734, 2020 WL 1812741, at *5 (S.D.N.Y. Apr. 9, 2020) (quoting *Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 278 (2d Cir. 2009)) (internal citation omitted). "The NYCHLR does not require that a plaintiff prove an adverse employment action"; rather, "the plaintiff need only show differential treatment—that she is treated 'less well'—because of a discriminatory intent." *Id.* (citing *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109-10 (2d Cir. 2013)). Because Ojeda "has

7

adequately [pleaded] sex-discrimination claims under Title VII . . . her similar claim under the broader NYCHRL also necessarily survives." *Farmer*, 473 F. Supp. 3d at 327.

        C.      **NYCHRL Claims Against Schrager**

The complaint also asserts NYCHRL claims against individual Defendant Schrager—for discrimination under NYCHRL § 8-107(a)(1) and for aiding and abetting discrimination under NYCHRL § 8-107(6). The New York Court of Appeals has explained that "where a plaintiff's employer is a business entity, the shareholders, agents, limited partners, and employees of that entity are not employers within the meaning of the [NYCHRL]." *Doe v. Bloomberg, L.P.*, 36 N.Y. 3d 450, 459 (2021). In other words, "[t]he unique provisions of the [NYCHRL] provide for broad vicarious liability for employers but that liability does not extend to individual owners, officers, employees, or agents of a business entity." *Id.* at 462. While the complaint asserts that Schrager is also Ojeda's "employer" and that he "owns" and "operates" the Public Hotel, that is insufficient to constitute a plausible allegation that he was the Plaintiff's employer under *Doe v. Bloomberg*. *See Bueno v. Eurostars Hotel Co., S.L.*, No. 21-CV-535, 2022 WL 95026, at *7 (S.D.N.Y. Jan. 10, 2022) ("Under a recent decision by the New York Court of Appeals, a corporate employee—even its owner and CEO—no longer qualifies as an 'employer' under [the NYCHRL]."). And while it is true that supervisors, managers, and co-employees can be held individually liable under the NYCHRL, such liability is limited to where they were personally involved in discriminatory conduct. *Doe*, 36 N.Y. 3d at 459 ("[I]ndividuals may incur liability [under the NYCHRL] only for their own discriminatory conduct, for aiding and abetting such conduct by others, or for retaliation . . . .").

Similarly, to state a claim under the aiding and abetting provision of the NYCHRL, § 8-107(6), a plaintiff must allege that a defendant "actually participated in the alleged discriminatory acts." *Bonterre v. City of New York*, No. 18-CV-745, 2021 WL 4060358, at *7

(S.D.N.Y. Sept. 7, 2021) (discussing the standard for aiding and abetting claims under both the NYCHRL and the New York State Human Rights Law, N.Y. Exec. Law § 296(6)) (internal quotation marks and citation omitted).

Ojeda alleges that Schrager owns and operates the Public Hotel. (Compl. ¶ 8.) Ojeda also alleges that at all relevant times, Schrager was "the most senior person at Public Hotel," and that when she was first hired, she reported directly to Schrager. (*Id.* ¶ 13.) Furthermore, Ojeda alleges that "Schrager repeatedly talked about having a culture that was 'on brand,'" which he made clear meant outward appearances" and that "[t]he real reason Ojeda was fired was because Schrager did not want a pregnant woman in a leadership role at his hotel." (*Id.* ¶¶ 28, 29.)

The complaint fails to allege that Schrager was personally involved in or "actually participated" in Ojeda's termination. *Bonterre*, 2021 WL 4060358, at *7 (internal quotation marks and citation omitted). Although Ojeda argues in her opposition to Defendants' motion to dismiss that "the terms and conditions of her employment were controlled by Schrager" and that Schrager "retained authority over all decisions at the Hotel" (ECF No. 27 at 10), these facts are not alleged in the complaint. Moreover, Ojeda does not allege any facts tying Schrager's alleged statements about the Public Hotel's "brand" to any discrimination on the basis of sex or pregnancy. Ojeda's conjecture that Schrager's statements indicate that he "did not want a pregnant woman in a leadership role at his hotel" is unsupported by factual allegations.

These allegations are insufficient to establish that Schrager was personally involved in or actually participated in Ojeda's termination. Thus, Ojeda's NYCHRL claims against Schrager are dismissed.

## IV.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part.

9

Defendant IS Development LLC shall file an answer to the complaint within 21 days after the date of this opinion and order.

The Clerk of Court is directed to terminate Defendant Ian Schrager as a party and to close the motion at ECF No. 22.

SO ORDERED.

Dated: May 13, 2024
       New York, New York

_____
J. PAUL OETKEN
United States District Judge